UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

CHARLES LONGSHORE,

                Plaintiff,

    v.

ROBERT HERZOG, STEPHAN SINCLAIR, et. al.,

                Defendants.

CASE NO. 16-cv-5629-BHS-JRC

REPORT AND RECOMMENDATION

NOTED FOR: NOVEMBER 4, 2016

      This 42 U.S.C. § 1983 civil rights matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. §§ 636 (b)(1)(A) and (B) and Local Magistrate Judge Rules MJR 1, MJR 3, and MJR 4. Before the Court is plaintiff's emergency motion for preliminary injunction and TRO. Dkt. 13. Defendants filed a response, Dkt. 44, and plaintiff filed a reply. Dkt. 50.

      While plaintiff may be dissatisfied with his mental health treatment and classification in the Intensive Management Unit at Washington State Penitentiary, this allegation does not arise to the level of a constitutional violation requiring the extraordinary remedy of a preliminary

1  injunction. Accordingly, the Court recommends that his motion (Dkt. 13) be denied without
2  prejudice.

## BACKGROUND

4  Plaintiff is currently housed at Washington State Penitentiary ("WSP") and filed this civil
5  rights action on July 14, 2016. Dkt. 1-1.  On August 5, 2016, plaintiff filed an amended
6  complaint. Dkt. 9. Plaintiff alleges that defendant Jason Scott wrote a false infraction against
7  plaintiff alleging that plaintiff threatened and assaulted him. *Id.* at ¶ 22. Due to this allegedly
8  false infraction, on July 1, 2015, plaintiff was placed in segregation on disciplinary pre-hearing
9  confinement. *Id.* at ¶ 21. While in segregation, plaintiff protested his innocence and his mental
10 health began to deteriorate, resulting in his placement in the mental health unit located in the
11 prison's infirmary. *Id.* at ¶ 26. Plaintiff alleges that he was placed in a room "with darkened
12 windows, no bedding, no mattress, no blankets, no toilets, no sink, [and] no ventilation, [with] a
13 hole [] in the ground that had feces in it and was used as a toilet." *Id.* On or around July 22, 2015,
14 while in the mental health unit, plaintiff, allegedly, attempted suicide and was discovered by staff
15 with a sheet around his neck, hanging from the metal sprinkler in his cell. *Id.* at ¶ 27.

16 Although plaintiff alleges that he initially was denied mental health treatment after this
17 event, he admits that shortly after his request a mental health provider, "John Doe Coleman,"
18 responded on his own without anyone's request and spoke with plaintiff. *Id.* at ¶¶ 28-31. Plaintiff
19 alleges that he subsequently filed an emergency grievance claiming that he would kill himself if
20 he was re-housed in the segregation unit and that this grievance never was responded to. *Id.* at ¶
21 33. However, subsequently, plaintiff allegedly was re-placed in segregation. *Id.* at ¶ 34.

22

23

24

1    On July 30, 2015, Correctional Officer Greg Pierce conducted a disciplinary hearing at which "he dismissed the assault on staff and threatening" charge. *Id.* at ¶ 35. However, Officer Pierce found plaintiff guilty of "using physical force/horseplay." *Id.* at ¶ 36.

Although plaintiff requested immediate release from segregation, this request was denied, and again, plaintiff's mental health began to deteriorate resulting in his placement again in "the mental health unit on (close observation) for again trying to kill himself due to severe depression." *Id.* at ¶¶ 37-39. Plaintiff alleges that he then was isolated from all human contact and confined to his cell for 23 hours per day, allegedly escalating his mental health conditions. *Id.* at ¶ 40.

Plaintiff appears to allege that he subsequently was placed again in segregation on "23 hour in cell confinement, with no visitation from friends in the outside world, no inmate contact, limited phone use, no outside exercise, 24-hour lighting, and inadequate mental health programs and treatment options." *Id.* at ¶ 41. He alleges that these conditions directly resulted in a mental health crisis, including suicide attempts. *Id.* at ¶ 42. Although plaintiff's family members and attorneys allegedly informed defendant Superintendent Donald Holbrook of these concerns, plaintiff was not released from segregation. *Id.* at ¶¶ 43-44.

On August 13, 2015, officials conducted a classification hearing regarding all of the above events and concerns, and "staff requested indefinite [Intensive Management Unit "IMU"] segregation placement." *Id.* at ¶ 47. Plaintiff's appeal to defendant Superintendent Holbrook was denied, and on October 1, 2015, plaintiff was officially assigned to indefinite segregation with an additional directive that plaintiff remain in segregation pending a transfer to an out of state facility. *Id.* at ¶¶ 48-49. Plaintiff allegedly appealed this decision to Assistant Secretary Stephen

1  Sinclair, who allegedly directed defendant Herzog to deny plaintiffs appeal and uphold the
2  classification staff's decision. *Id.* at ¶¶ 60-61.
3        Plaintiff alleges that an attorney told him that he would not be allowed "out of IMU
4  [because] we don't like inmates who assault staff and get away with it: that's why we have two
5  processes, so if we don't like the disciplinary outcome we can still place him on indefinite IMU
6  segregation." *Id.* at ¶¶ 62-63. Although plaintiff allegedly filed an appeal based on this
7  information, his appeal was denied. *Id.* at ¶¶ 65-67.
8        On July 25, 2016, officials held another classification hearing, at which mental health
9  provider Jaime Davis allegedly "requested [plaintiff's] release to participate in intensive mental
10 health treatment." *Id.* at ¶ 69. This request allegedly was denied by classification staff. *Id.* at ¶
11 70.
12       Plaintiff indicates in his declaration that he suffers from "a deep manic depression,
13 bipolar disorder and high anxiety that's severe that causes suicidal actions and nervous
14 breakdowns." Dkt. 14, ¶ 5. Plaintiff indicates that if he is not released from IMU segregation and
15 placed "in the proper housing area," he fears that his condition will get worse, "which may, out
16 of my control, result in suicide." *Id.* at ¶ 6. Plaintiff alleges that "all [of the] mental health staff
17 verify that" his placement in IMU segregation is "destroying" his mental health. *Id.* at ¶ 7.
18       In his motion for preliminary injunction and TRO, plaintiff claims that he is "in
19 segregation unlawfully due to retaliation and falls [sic] disciplinary infractions." Dkt. 13 at 1.
20 Plaintiff "seeks a TRO or preliminary injunction to ensure that he is released from segregation
21 and placed in mental health treatment located in WSP Bar units to prevent further psychological
22 damage and prevent suicide attempts due to [plaintiff's] extreme depression and extreme
23 isolation conditions which are escalating [plaintiff's] mental health conditions." *Id.* The WSP
24

REPORT AND RECOMMENDATION - 4

Bar Units are special units for inmates who are in protective custody for mental health reasons. Dkt. 46 at ¶ 3, Bowman Declaration.

## STANDARD OF REVIEW

A preliminary injunction is an "extraordinary and drastic remedy" that is never awarded as of right. *Munaf v. Geren*, 553 U.S. 674, 689-90 (2008) (citations and quotation omitted). Instead, the instant motion requires the court to "balance the competing claims of injury and ... the effect of the granting or withholding of the requested relief." *Winter v. Natural Res. Def. Council*, 129 S. Ct. 365, 376 (2008) (*quoting Amoco Prod. Co. v. Gambell*, 480 U.S. 531, 542 (1987)). A plaintiff seeking a preliminary injunction must establish the following: (1) a likelihood of success on the merits, (2) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (3) a balance of hardships favoring the plaintiff, and (4) advancement of the public interest. *Id.* (citations omitted). This is an "extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Id*. at 376. Moreover, plaintiff must show more than a mere "possibility" of irreparable harm, but instead must "demonstrate that irreparable injury is likely in the absence of an injunction." *Id*. at 375 (emphasis and citations omitted).

In a civil rights case, injunctions must be granted sparingly and only in a clear and plain case. The Prison Litigation Reform Act imposes additional limits on prospective relief:

> Preliminary injunctive relief must be narrowly drawn, extend no further than necessary to correct the harm the court finds requires preliminary relief, and be the least intrusive means necessary to correct that harm. The court shall give substantial weight to any adverse impact on public safety or the operation of a criminal justice system caused by the preliminary relief and shall respect the principles of comity set out in paragraph (i)(B) in tailoring any preliminary relief.

REPORT AND RECOMMENDATION - 5

18 U.S.C. § 3626(a)(2). "N]o longer may courts grant or approve relief that binds prison administrators to do more than the constitutional minimum." *Gilmore v. People of the State of Cal*., 220 F.3d 987, 999 (9th Cir. 2000).

## DISCUSSION

1. Likelihood of success on the merits

   a. Inadequate medical treatment

The government has an obligation to provide medical care for prisoners. The Eighth Amendment proscribes deliberate indifference to a prisoner's serious medical needs. *Estelle v. Gamble*, 429 U.S. 97, 103 (1976). To establish "deliberate indifference," a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *Id*. at 104. A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical need; and (2) the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

"A 'serious' medical need exists if the failure to treat a prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (*quoting Estelle*, 429 U.S. at 104). Further, a prisoner can make no claim for deliberate medical indifference unless the denial was harmful. *McGuckin*, 974 F.2d at 1060; *Shapely v. Nevada Bd. of State Prison Comm'rs.*, 766 F.2d 404, 407 (9th Cir.1985).

To establish "deliberate indifference," a prisoner must show that a defendant purposefully ignored or failed to respond to the prisoner's pain or possible medical need. *Id*. at 104. A determination of "deliberate indifference" involves an examination of two elements: (1) the seriousness of the prisoner's medical need; and (2) the nature of the defendant's response to that need. *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1992).

Here, plaintiff alleges that his medical treatment is contrary to the recommendations of Jaime Davis, plaintiff's primary mental health provider. Dkt. 13 at 2. Plaintiff alleges that he needs to be released from IMU and placed in the WSP BAR Units. *Id.* Plaintiff alleges that he has a history of suicidal thoughts. *Id.*

However, defendants set forth evidence that plaintiff's mental health treatment in IMU is the same as it would be in the BAR Units and that there is no discrepancy in medical treatment. Dkt. 45 at ¶ 16. In IMU, plaintiff receives weekly group therapy sessions, weekly individual therapy sessions (if requested), and all of his prescribed medication. *Id.* Thus, plaintiff's requested relief, transfer to the BAR Units, would not have any impact on his available mental health treatment. *See id.*

In reply, plaintiff submits a series of medical reports. *See* Dkt. 53. However, these medical reports do not show that he is being denied mental health treatment, and in fact, the reports demonstrate that plaintiff was seen by WSP mental health providers on July 22, 2016 (Dkt. 53 at 2), July 25, 2016 (*id.* at 3), August 4, 2016 (*id.* at 4), and August 9, 2016 (*id.* at 9).

There is certainly a wide disparity between what plaintiff is alleging and the counterbalancing evidence presented by the parties regarding his treatment.  This Court would be hard pressed to reexamine every decision by corrections facilities when dealing with these difficult issues of mental health and safety.  While the courts must be vigilant in addressing issues of deliberate indifference in the correctional setting, it cannot intervene when the evidence does not clearly present a problem that requires immediate redress.  While plaintiff may prefer to receive treatment in the BAR Units, such a preference does not constitute an Eighth Amendment violation. Based on the information currently before the Court plaintiff has failed to make a clear showing that he is entitled to the extraordinary relief of a preliminary injunction. Thus, at this

early stage in the proceedings, and based on the evidence submitted with this motion, it does not appear that plaintiff will be able to show deliberate indifference. Plaintiff has not met his burden that he is likely to succeed on the merits.

      b. Denial of Transfer

Although unclear, it also appears that plaintiff alleges that his transfer to the BAR Units was approved and is now being arbitrarily denied. Dkt. 13. However, inmates do not have a constitutional right to a particular classification status. *Moody v. Daggett*, 429 U.S. 78, 88 n. 9 (1976); *Myron v. Terhune*, 476 F.3d 716, 718 (9th Cir. 2007). This is true even where the facility or classification is "substantially less agreeable" and visits a "'grievous loss' upon the inmate." *Moody*, 429 U.S. at 88, n. 9. Moreover, prison officials are afforded deference in their decisions as to the "ordinary incidents of prison life [.]" *Sandin v. Connor*, 515 U.S. 472, 482–83 (1995). *See also Meachum*, 427 U.S. at 229 ("The federal courts do not sit to supervise state prisons, the administration of which is of acute interest to the states."). Accordingly, plaintiff has not shown a likelihood of success on the merits as to this claim.

Even if plaintiff had a cognizable constitutional claim related to his classification status, the record before the Court demonstrates that Jamie Davis never promised plaintiff placement in the BAR Units. Dkt. 45 at ¶ 19. Instead, she stressed that mental health providers could not make such classification determinations and that the decision was ultimately up to Department of Corrections ("DOC") classification staff. *Id.* This is also supported by the medical report submitted by plaintiff. Dkt. 53 at 9. Thus, plaintiff's allegation is not supported by the record.

Because plaintiff, as the moving party, must meet all four requirements before the Court can issue a preliminary injunction, the Court could stop the analysis here. However, because the parties also address the three remaining elements, the Court will do so as well.

### 2. Irreparable harm

Second, plaintiff has not demonstrated the likelihood of irreparable injury absent the requested relief.  Plaintiff must demonstrate real and immediate threat of future injury and past injury is largely irrelevant.  *See O'Shea v. Littleton*, 414 U.S. 488, 496 (1974); *Rizzo v. Goode*, 423 U.S. 362, 372 (1976); *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983).

Plaintiff alleges that he "is threatened with irreparable harm because of the nature of his mental health conditions rising to the level of self harm that could eventually end in death if suicide is accomplished." Dkt. 13 at 3. While there is no question that if plaintiff was to succeed in committing suicide, the harm would be irreparable, defendants have submitted evidence that there are procedures in place at WSP to protect against that outcome. As defendants have demonstrated, plaintiff is being regularly evaluated by mental health specialists. Dkt. 45 at ¶¶ 16-19. Furthermore, plaintiff's progression through therapy and behavioral classes in IMU do not support his contention that his suicide is imminent. *Id.* at ¶¶ 14-15. Therefore, the Court finds that plaintiff has not shown a likelihood of irreparable harm.

### 3. Balance of equities

A party seeking injunctive relief "must establish ... that the balance of equities tips in his favor." *Winter,* 555 U.S. at 20. In addition, "[i]n exercising their sound discretion, courts of equity should pay particular regard for the public consequences in employing the extraordinary remedy of injunction." *Winter,* 555 U.S. at 24 (quotation marks and citation omitted). When a plaintiff seeks to enjoin the activity of a government agency, even within the unitary court system, his case must contend with "the well-established rule that the government has traditionally been granted the widest latitude in the dispatch of its own internal affairs." *Rizzo v. Goode*, 423 U.S. 362, 378 (1976) (citations omitted).  This holding applies even more strongly in

1  cases involving the administration of state prisons.  *Turner v. Safley*, 482 U.S. 78, 85 (1987).

2  "Running a prison is an inordinately difficult undertaking ... peculiarly within the province of the

3  legislative and executive branches of government ... [S]eparation of powers concerns counsel a

4  policy of judicial restraint.  Where a state penal system is involved, federal courts have, as we

5  indicated in *Martinez*, additional reason to accord deference to appropriate prison authorities."

6  *Id.* at 85, *citing Procunier v. Martinez*, 416 U.S. 396, 405 (1974), *rev'd in part on other grounds*

7  *in Thornburgh v. Abbott,* 490 U.S. 401 (1989).

8         Plaintiff contends that this factor favors plaintiff because "the present suffering of the

9  plaintiff and his potential suffering could later amount to death are enormous, [while] the

10  'sufferings' defendants will experience if the court grants the order will consist of taking the

11  plaintiff from segregation, to be placed in WSP bar units mental health unit, to see suitable

12  providers and undergo treatment that would de-escalate [plaintiff's] conditions and put in check

13  his disabilities." Dkt. 13 at 3-4. Balanced against his interest in a transfer to the WSP BAR Units

14  is the state's interest in the safety and security of the prison.  In balancing these competing

15  interests, the Court must also weigh the evidence presented.  Accepting as true every allegation

16  of mistreatment would be tantamount to placing this Court into a position of reevaluating every

17  decision called into question by a prisoner.  That would place an extraordinary burden not only

18  on the DOC, but also on the court system.  This is not what our courts were designed to do.

19  Injunction is only appropriate if plaintiff is able to make a clear showing that the plaintiff is

20  entitled to such relief.  Without evidence to the contrary, this Court should not disturb DOC's

21  decision to house him in IMU and not transfer him to the WSP BAR Units because doing so

22  could undermine the DOC's policies and procedures and granting the relief requested would

23  thrust this Court into a supervisory role that it is not designed to fulfill.  Based on the evidence

24

presented in support of this motion, the undersigned concludes that the balance of equities does not tip in plaintiff's favor.

### 4. Public Interest

"The public interest analysis for the issuance of a preliminary injunction requires [this Court] to consider 'whether there exists some critical public interest that would be injured by the grant of preliminary relief.'" *California Pharmacists Ass'n v. Maxwell-Jolly*, 596 F.3d 1098, 1115 (9th Cir. 2010) (internal citation omitted).

Finally, plaintiff contends that "granting relief will serve the public interest because it is always in the public interest for prison officials to obey the law, especially the Constitution." Dkt. 13 at 4. This Court certainly agrees that it is in the public interest for prison officials to obey the law and the constitution, but granting the extraordinary relief of a preliminary injunction in the face of such contradictory evidence will not necessarily further that goal and may be contrary to maintaining the separation of powers, which also serve a public interest.

Thus, application of the four *Winter* factors to the evidence before the Court does not support the extraordinary remedy of preliminary injunctive relief.

### CONCLUSION

The undersigned recommends that plaintiff's motion for preliminary injunction and TRO (Dkt. 13) be denied without prejudice. Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

1  Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for

2  consideration on **November 4, 2016** as noted in the caption.

3  Dated this 7th day of October, 2016.

J. Richard Creatura
United States Magistrate Judge