United States District Court
Westren District of Washington
At Tacoma

Charles S. Longshore,            No. 3:16-CV-05629-BHS-JRC
        Plaintiff,

                                 Plaintiff's Second Amended
        Vs.                      Complaint for Damages

            Defendant(s)         (Jury Trial Demand)
Dept of Corrections, et al,
In individual and official capacities.

## A. Parties

1. Plaintiff, Charles Longshore is a mentally ill Inmate housed in Segregation at the Washington State penitentiary. 1313 N. 13TH Avenue Walla Walla, WA 99362

2. Defendant Department of Corrections is a Washington State agency in Olympia Washington. P.o Box 41100 Olympia, WA 98504

3. Defendant Robert Herzog, is the Deputy Director at the Dept of Corrections in Olympia Washington. P.O. Box 41100 Olympia, WA 98504

4. Defendant, Danald Holbrook, Superintendent for the Washington State penitentiary. 1313 N. 13TH Avenue Walla Walla, WA 99362

(1)

5. Defendant, Chris Bowman, is the Assoc. Superintendent at Washington State penitentiary. 1313 N. 13TH Avenue Walla Walla, WA 99362

6. Defendant, Scott Buttke is the Correctional Unit Supervisor at Washington State penitentiary 1313 N. 13TH Avenue Walla Walla, Wa 99362

7. Defendant, Rodney Shumate is the Correctional Unit Supervisor at Washington State penitentiary 1313 N. 13TH Avenue Walla Walla, WA 99362

8. Defendant, Psychology Associate Jaime Davis is the primary Mental Health provider at the Washington State penitentiary Intensive Management Unit. 1313 N. 13TH Avenue Walla Walla, WA 99362

9. Defendant, Dr. Daniel Varnell M.D. Psychiatrist at Washington State penitentiary. 1313 N. 13TH Avenue Walla Walla, WA 99362

10. Defendant Jason Stott, former D.O.C contract employee at Washington State penitentiary 1313 N. 13TH Avenue Walla Walla, WA 99362

B. Jurisdiction & Venue.

11. This is an action brought pursuant to The Americans with Disibilities Act 42 U.S.C § 1 2101 et seq. For Denial of services, acomadations, discrimination any any other theory discoverd.

12. Further this is an action brough pursuant to 42 U.S.C ss 12203(a) Retaliation, (b) Interference, coercion, or intimidation Remieds Section 107, 203, 308 for 42 U.S.C ss 1 2117, 1 2133, 12188, with respect to title, one, title, two, and title three 42 U.S.C ss 1 2111 et seq, 1 2131 et seq, 12181 et seq.

13. Further this is an action brought pursuant to Section 505, 504 Rehabilitation Act of 1973 29 U.S. C 8794(a)

14. Further this is a action brought pursuant to 42 U.S.C § 1983 for Deprivations of rights, secured by the constitution and Law's, by persons under Color of State Law.

15. Pursuant to 42 USC ss 1 2202 state shall not be immune under the eleventh Amendment for purposes of ADA violations, Pursuant to title II, 42 U.S.C 12132 and (1)(B) and pursuant to U.S. v Georgia, 546 U.S. 151, 126 S.Ct. 877(2006)

16. Further this is an action brought pursuant to 42 U.S.C ss 1985 (2) and (3) and 8 1986. For conspiring to violate plaintiffs rights, for intimidating and retaliating against a party in federal proceedings, and failing to act to stop such violations known to Defendants.

③

17. Further this is a action brought pursuant to 42 U.S.C SS 1981 For violating the equal Rights of plaintiff.

18. Further this is an action brought pursuant to state Law claims under RCW 19.86.093 (3)(a)-(b)-(c), For deceptive acts and practices that do not comport with Law.

19. Further this is an action brought pursuant to RCW 71.05 et seq, 71.28, 71.32, For violating and failing to accomadate, treat, Rehabilite Mental illnesses of plaintiff.

## Venue

20. This court has Jurisdiction under 28 U.S.C § 1331, 1343(3), 1357, 1367, 1332.

21. Venue is proper under 28 U.S.C SS 1391. Because more then one defendant resides in this district. As well the Dept of correction's is stationed in this districts domain.

## C. Introduction

22. The American Correctional Association (ACA) is the primary body in the United states that promalgates standards for the Operations of Jail's and prisons. Those standards say:
"written policies and procedures describe all facets of facility operations, maintenance, and administration, are reviewed annually and updated as needed. New or revised policies and procedures and disseminated to

(4)

Staff, and, where appropriate, to contractors, volunteers, and inmates, prior to implementation." ACA-Core-7D-cl (emphasis added).

Additionally, In part it also say's: "The health care Provider determines the appropriate setting for further Medical attention or examination and May request an Inmate's removal from a cell or housing area to a clinical environment." ACA-Core-2A-22.

23. There is no such standard, Known to plaintiff, that Health care providers determin the appropriate setting For Further Medical Attention. Apon entering or anytime during segregation, within the Dept of corrections(DOC), DOC has a practice that overrides, Medical staff's requests, Discriminate against its own inmates who use the medical process, and being deliberately — indifference to the serious Medical needs of its own Inmate's.

ACA Standards also require that:

"All special management inmates are personally observed by a correctional officer at least every 30 Minutes on an irregular schedule. Inmates who are violent or mentally disordered or who demonstrates unusual or bizarre behavior are assessed by Medical personnel, who determin the level of supervision needed" ACA I-Core-2A-24.

"This standard reflects what is well Known about the increased risk for self-harm and suicide for inmate's in Segregation." See Expert Report of Eldon Jail, No:C14-05852-RBL. Exhibit#1. Former WA State Secretary of DOC.

24. Mental Health care of prisoners is governed by the same constitutional standard of deliberate indifference as is medical

Care. Hoptowit v. Ray, 682 F.2d. 1237, 1254 (9th cir.1982); Bearing v. Godwin, 551 F.2d 44, 47 (4th cir. 1976)

25. As Such, Doc, has failed at its responsibilities in the following way's:

1. Lack of adequate Mental Health screening on intake.

2. Failure to follow up on prisoners with known or suspected Mental health disorders.

3. Failure to provide adequate numbers of Qualified Mental health staff.

4. Housing Mentally ill prisoners in segregation.

5. Failure to transfer Mentally ill prisoners to more appropriate facilities.

6. Lack of training of custody staff in mental health issues.

7. Inadequate crisis intervention.

26. As a result, Myself and other's have fallin ill Mentally. fourtently, IM still alive, while others have died because of these failed practices. Rest in peace Morgan Bluehorse, died of Suicide in seg.

## D. Statement of Facts

27. Jail's, Prison's, their employees, nor their subcontractors are allowed to gamble needlessly with the safety of inmates. If they do and an inmate suffers, is injured, or dies, the Inmate (or his or her family) is entitled, to full compensation for the harms and losses caused.

28. Since an Early childhood Mr. Charles Longshore has Suffered from acute mental illness.

29. Through out most of Mr. Longshore's entire life, he's been under the care of Mental Health providers, been proscribed Maltitudes of Medications to treat his conditions, and been through all kinds of therepy type treatments.

30. At least on one occasion Mr. Longshore was taken to the providence st. peters Hospital for Mental health crisis. While not in any type of custody.

31. Since June 1st 2012, Mr. Longshore has spent approximetly 83% of the 4 1/2 year's in segregation. 1/2 of witch was unlawful, without reason, and in retaliation for filing grievences.

## E. Incidents

32. On July 1st 2015 Mr. Longshore was placed in segregation on pre-hearing confinement, for a infraction written by former — contract employee Jason stott. That Alledged Assault on staff and Threating other's.

33. On that same day, Mr. Longshore appealed the placement and demanded a Investigation. Claiming the Allegations to be False.

34. That Defendant Chris Bowman responded, by written letter. Claiming a investigation is being conducted and will be turned into Defendant Scott Buttice.

35. While in segregation, Mr. Longshore's Mental Health began to rapidly detiorate. Resaulting in a placement in the Mental Health unit located in wsp-Hospital on July 16, 2015. Just fifteen days after IMU placement.

36. Also on July 16, 2015 a psychiatric Assessment was completed by Doc psychiatrist Daniel Varnell, M.D. Defendant Varnell, diagnosed Mr. Longshore as to haven 1. Mood disorder, 2. Anxiety, and 3. Impulse control disorder.

37. Then one week later after a Suicide Attempt where Mr. Longshore Made a noose, hung it around his neck and tied it to the Metal sprinkler. A team of Mental Health providers To wit: Bill coleman administerd a Mental Health assesment on July 27th 2015.

38. The Assement, diagnosed Mr. Longshore with, 1. Border line personality disorder, 2. Anti social personality Disorder, 3. post-Traumatic stress disorder, 4. Substance Abuse, 5. Major Depressive disorder.

39. This Assesment was peer reviewed and Signed by Mental Health supervisor Dr. Randy Gibson, while Mr. Longshore still was in the Acute Mental Health unit in the Facility hospital.

40. Through both Interviews with Dr. Varnell and Psyc. Asoc. Coleman Mr. Longshore said he cant go back to Segregation (IMU).

41. In Fact Mr. Longshore was sceduled to return to IMU on July 27TH 2015. However, Mr. Longshore handed the escort Staff a "Emergency Grievence" claiming he would kill himself if placed back in IMU. This Grievence was never responded to.

42. Shortly there after that same day, Defendant(s) Bowman and Buttice came on the tier in the Mental Health Unit. Bowman began yelling at all the patients to include myself to "stop playing Games", "Im moving all you off this tier"... As if our conditions didnt Matter to him.

43. Mr. Bowman, Threatned me that if I didnt return to IMU. I would be infracted for refusing the transfer earlier, when I filed a "Emergency Grievence" stoping the Move.

44. After some exchange between Bowman and Buttice, I gave in, to go back to IMU, to avoid getting a infraction and haven to lose privileges and add More IMU time.

45. Immediately, upon Entry to the IMU, Psyc. Assoc. Jaime Davis came and scene me in the holding cell. She told me that I have been assigned weekly 1 on 1 therepy sessions.

46. After Never recieving any 1 on 1 therepy sessions while still suffering from My condition's, that was never treated. Given Bowman Demanded My return to IMU. On August 24, 2015 Mr. Longshore Demanded a Mental Health Emergency.

47. PSYC. ASSOC. Keith Goodenough responded. He claimed despite my suicidal thoughts, his supervisor is urging me to just meet with Dr. Varnell and not be admitted to the Mental Health unit on close observation, "CO".

48. As a result, instead of following procedures after receiving a suicide threat. Dr. Varnell, was requested to meet with me.

49. During our meeting, Dr. Varnell found reason to adjust the medication by increasing the doses.

50. 3 days later on August 27th 2015. Mr. Longshore was admitted to the "CO" Area. Due to serious threats of suicide.

51. These actions, Mr. Longshore took is a direct result of failure to conduct 1on1 sessions, Ignoring Mental Health needs, being housed in segregation while suffering a maltitude of diagnosis, being in a unstable state of mind, without proper care.

52. Had Ms. Davis and Dr. Varnell followed through with the proper and proscribed care, Mr. Longshore would not of sought suicide as a way to end his suffering.

53. During the course and to date, Mr. Longshore suffers from insomnia. Due to his mental conditions, escalating from the harsh segregation environment.

54. While these Mental Health Crisis are going on, Mr. Longshore was still dealing with Mr. Stott's false Allegation,

55. On July, 30th 2016. A Infraction hearing was held by Mr. Greg Pierce. Where Mr. Pierce, found, Mr. Stott was not Assaulted or threatened. Instead, found Mr. Longshore guilty of the reduced charges of Wac 663 using physical force, and wac 333 have (Disruptive behavior).

56. Mr. Longshore Immediately Appealed the Infraction on a number of grounds. Claiming the Infraction is not supported by evidence, in violation of due process, Does not comply with Doc policy, was not clear.

57. On August 17th 2015, Mr. Longshore recieved a decision on his infractions by Defendant Donald Holbrook. Affirming the decision, without explanation.

58. After defeating the false allegations of Assault and Threating. Mr. Longshore, Immediate Sought his release from IMU.

59. He submitted offender kites to: Scott Buttice, Ricardo Alaniz, Chris Bowman, cus. Chuck pease, supt. Donald Holbrook, psyc. Assoc. Jaime Davis and a Maltitude of others, All of which was denied. With complete disregard for Mr. Longshore's Mental condstions or his rights there too.

60. In fact, Attorney Brett purtzer Attempted to gain My release from Segregation Citing My Mental illness as a reason to consider release to get more mental Health care.

⑪

61. However, Mr. Holbrook Denied Cansel's requests, Despite being notified of Mr. Longshore's conditions and recent Suicide Attempt.

62. As a result and without any regard to Mr. Longshores Mental Health status, Unit Classification staff Defendant Scott Buttice at the direction of Defendant Rodney Shumate and Mr. Bowman. Recommended, a override to "Max" custody and be Assigned to "Intensive Management Status" IMS. For a Inditinite period of time.

63. Mr. Longshore, Appealed this decision to Mr. Holbrook, where It was denied.

64. As a result, Head Quarters Assigned "IMS" placement, with a additional directive that Mr. Longshore will remain in segregation pending a "out of state placement," "005", on october 1st 2015.

65. Mr. Longshore Appealed this decision to Assistent secretary of prisons Defendant Stephan Sinclair, who Directed Defendant Robert Herzog to respond and deny My Appeal.

66. The IMS placement was based on the following statement of Mr. Buttice:
    "The volunteer still works in the area and there is no way to ensure these two do not cross paths again".
    Written in part, of Custody facility plan, Submitted August 13th 2015 And finalized October 1st 2015 by Defendant John Campbell and his panel of witch he Chairs.

67. Part of Mr. Campbell's duties, to also include Mr. Buttice's, was to review and verify the reasons for IMS placement still exist, verify active sepretee's and conduct thourogh reviews required by policy and Due process.

68. Had Mr. Campbell done his Job befor entering his decision on Oct 1st 2015. He would of found out, Jason Stott was terminated one Month prior of Issueing his decision.

69. Because of the neglect, Mr. Longshore would not still be in IMU. Because, the reason no longer existed. Witch Mr. Buttice relied apon. As a result, Mr. Longshore has now served almost 13 Months of false imprisonment in segregation unlawully, in Violation of Due process, and suffering cruel and unusual punishment. All defendant's know, Mr. Longshore suffer's from Mental disibilities. They also knew, IMU was escalating them. Yet failed to act, and provide any accomodation to aid in the Mental wellbeing of Mr. Longshore, and was deliberedly indifferent to Mr. Longshores serious Mental Health needs.

70. Whats more, an Attorney by the name of Mitch Harrison Contacted Mr. Longshore. At the request of his client Jose pineda. To notify Me, that he has wrote a letter on My behalf to the superintendent outlineing that wittnesses Claim Mr. Longshore is innocent, the infractions are false and believed to be in retaliation.

71. Mr. Holbrook, Disregarded this Information and failed to act on them.

72. Additionally, 3 more wittnesses came forward, John James, Doinicio Russell, and Taylor Wolf. Detailling, that Mr. Shumate spoke with Bowman and Buttice prior to My classification being submitted. Where all conspired and agreed to refer Me to IMS placement.

73. This was so, because Mr. Shumate was un happy with the disciplinary outcome, and wanted more punishment. "offender John James Reported that Shumate stated:" Thats why we have two processes, so if we dont like the disciplinary out come, we can SNII request IMS placement" In reply, to Mr. James Question, how come he wont allow longshore to return to the unit.

74. Not only, does this demonstrate that Mr. Shumate, Mr. Buttice and Mr. Bowman conspired prior to Mr. Longshore's classification "MDT" hearing, but all exercised a Abuse of power. By mis-Useing the Adminstrative segregation process, and IMS process. In violation of policy and Due process, as well the 8TH Amendment.

75. All while Mr. Longshore is suffering from severe Depression and Contimplating suicide, have had numerous trips to the "CO" Area on Suicide watch, Attempted Suicide and Suffering the entire time.

76.    As recently articulated by the U.S. District Court for the Eastern District of New York in U.S. v. D.W.:

Solitary confinement, generally speaking, is the practice of socially isolating a prisoner from the general population and depriving him or her of most environmental stimuli. It has long been used as a form of punishment. Prisoner's isolation is also adopted in response to safety concerns; inmates who are at risk of harm are segregated from general population for their own protection. Even though non-punitive, inmates in protective custody, as this form of isolation is known, experience the same deprivations as prisoners separated for punitive purposes. Solitary confinement is punishment taken to the extream. Solitary confinement induces the bleakest depression, plunging despair, and terrifying hallucinations. If these Inmates didn't have Mental Health issues befor they were placed in solitary confinement, they do now. After relatively brief periods of solitary confinement Inmates have exhibited symptoms such as Hypersensitiviti to stimuli, perceptual distortions and hallucinations, increased anxiety, lack of impulse control, severe and chronic depression, appetite and weight loss, heart palpitations, sleep problems, and depressed brain functioning. The restriction of enviormental stimulation and social isolation associated with confinement in solitary are strikingly toxic to mental functioning. Even causing "confusional psychosis" in some inmates. Research has demonstrated that time served in solitary confinement can lead to

serious Mental illness in health individuals. It Significantly
excerbates the condition's of those already Suffering
from emotional instabilities. In Solatary Confinement
ordinary Stimuli became intensly unpleasant and Small
irritation's become Maddening. Individuals in such
Confinement brood upon normal unimportant Stimuli and
Minor irritation's became the focus of increasing agitation,
and Paranoia. Countless individuals in solitary —
confinement. have became obsessively pre-occupled
with Some Miner, almost imperceptible bodily sensation,
a Sensation which grows over time into a worry, and
finally into an all-consuming, like threating illness. In-
Mates with pre-existing Mental illness are likely to suffer
The Most severe consequences from Isolation" No. 13-
0173, 2016 WL 4053173, at 46, 60-63 (E.D. NY July
28ᵗʰ 2016)

Whats More disturbing:
"The effects of Solitary confinement do not end when an
individual is released. Experts point to solitary
confinement as a form of "social Death". which can
lead to permanent harm of "a continued intolerance
of social interaction" That prevents an inmate from
reintergrating into the larger prison population and into
society. This continued effect is likely to intensify the
risk of harm to the public posed by newly released
inmate's who has served time in solitary confinement".
Id at 63.

77.      Perhaps MS. Davis was aware of this when she attended a

(16)

77. "MDT" classification hearing on July 25ᵀᴴ 2016. With a primary goal in the MDT to ensure that Mr. Longshore would be admitted to the "Residential Treatment Unit" RTU.

78. At the "MDT", a consensus was reached that Ms. Davis would present Longshore's situation to the Mental Health Care Review Commitee (MHCRC).

79. On August 9ᵀᴴ 2016, the committee approved (RTU) placement. Mental Health Director Karie Rayner, emailed this approval to Ms. Davis, as well Classification Counselor Ricardo Alaniz. So that Classification Staff can initate there process to release Mr. Longshore to the (RTU).

80. Subsequently, Mr. Bowman Directed Unit staff to seize from Maken the Release recommendation to (RTU).

81. Mr. Alaniz with Unit Classification, claimed that this was a directive from Bowman, Herzog and Mr. Sinclair.

82. Shortly, there after Unit officers reported to Mr. Longshore that they over herd Ms. Griffith being told by Bowman, that Mr. Longshore's release will not happen. Since he's filed a Law Suit against our staff. Specifically they herd him say "He wants to play games, will play games".

83. This is exactly what happened. Instead of being released from IMU like every other Inmate, who graduated our class. Mr. Longshore was Not.

84. Admitted by Ms. Davis " I anticipated Longshore would transfer out of what we call "intensive Management status" (IMS) once he completed the Alternatives to Aggression Program."

85. This did not happen. Although, upon graduation of this class offenders earn a recomendation for release from IMU.

86. Mr. Longshore Immediately filed grievences agains Mr. Bowman and Mr. Herzog for retaliation for exercising his right to use the courts. All of witch was denied through all levels.

87. Mr. Longshore filed a "Supplement Appeal" to Superintendent Holbrook, However Defendant Bowman intercepted and responded denying My appeal.

88. A Appeal was sent to Director Richard Morgan, However Defendant Herzog intercepted and responded denying My release.

89. As a resault, Mr. Longshore can recieve no redress to his grievences. Since the defendants Intentionally obstruct the correspondences to there Superiors. Maken it where, full exaustion is not possible.

90. The Dept of Corrections, the defendants herein have Maintained Pollicies, customs, and procedures that are unconstitutional and below the Quality of care known and understood by reasonable and prudent prison and Jail Administrators, in that Defendants have for example:

(a) failed to adequately train its employees in suicide prevention.

(b) failed to follow its own written policies in suicide prevention.

(c) failed to monitor, provide follow up, or fulfill prescribed care, by its own Mental Health staff.

(d) Failed to enforce policies and procedures for suicide prevention, Mental Health care, Disibility accomadations process, and protecting its Inmate patients.

(e) Caused, Allowed, permitted a custom and practice of continued and presistent deviations from its policies and procedures.

(f) Failed to provide sufficient resources to provide necessary care for Mentally ill inmate's.

(g) Failed to provide adequate numbers of coualified Mental Health staff in its (FMU's).

(h) failed to transfer Mentally ill inmates to more appropriate facilities.

(I) Failed to establish programs, services and classes Ran by Mental Health for Mentally ill prisonei's.

(J) Failed to enforce the abovesaid policies and procedures by disciplining its employees.

all of witch amounts to negligence and deliberate indifference to Known Serious Mental Health needs.

91.   The Doc and its agency's have adopted the (ACA) Standard's, have accepted federal fund's consistent with the Americans with disibility Act and the rehabilitation act. Havin adopted these standards Doc MUST extend the protections offered there by to all inmates Nat'l Elec. Contractors Ass'n Cascade Chapter v. Riveland, 978 P. 2d 481, 490 (Wash, 1999).

92. The DOC, it employees or Defendants deliberately did not follow these and other policies and standards, which evidences their deliberate indifference and negligence, Salter V. Booker, NO 12-0174, 2016 WL 3645196 at 12 (S.D. Ala. June 29th 2016)

93. Defendant DOC, it's employees or defendants in this case adoption of these standards, aimed at mitigating risk of serious injury to individuals such as Charles Longshore, Morgan Bluehorse and countless others, conclusively prove that they knew of the risk of the very harms Mr. Longshore has and is undergoing, Castro V. County of Los Angeles, NO. 12-56829, 2016 WL 4268955 at 12 (9th Cir. Aug. 15, 2016)

94. In the alternative, and in addition DOC, and defendant's Bowman, Holbrook, Davis, Varnell and Herzog, were deliberately indifferent and negligent in there failure to implement these and/or other standards and policies and/or train, supervise, fund, staff, and/or control its employees and/or contractors in these regards.

95. Defendants are not even trying; they have been negligent, grossly negligent, and have showed deliberate indifference to the Mental health needs of its Inmates - this includes again failing to have and follow proper training, policies, and — procedures for the care and treatment of people housed in its IMU's - It also includes a cold-hearted attitude on the part of its staff and contractors, who ignore the care and safety by turning a blind eye and deaf ear to people who have serious mental Health needs.

96. Although Suicide is a Known problem amongst Jails and prison's who use isolation. Defendants have failed to follow proper policies, provide follow care, adequate therepy sessions ect. All of witch could save a life, de escalate psycological harms, reduce Suicidal thought and May even gain a purposewiness to Live.

97. A policy of ignoring care for mentally ill inmates, and only providing care when an Inmate actively Demands it. Is perse deliberate indifference, and falls fer below the standard of Care required by puison officials.

98. In addition, when inmates seak help they are ignored. Here, Mr. Longshore Since his return from "CO" area placement. Almost on Every occasion, I seen MS. Davis, on the tier, in the hall, or in class Asked that she pull Me out for My 1 on 1 Session's. All requests have gone unanswered.

99. In fact, the only times Mr. Longshore has actually been let out to speak with Ms. Davis. Is eaither (a) after declaring a Mental Health Emergency, (b) haven officer's go get Ms. Davis, (b) haven officers call her. But not once on her own accord. Despite, being proscribed by My provider to due group and individual therepy sessions.

100. In addition, all while suffering continuess psycological harm, insomnia sleep deprivation's, Anxiety attacks, Suicidility, Defendants Herzog and Bauman are retaliating against Mr. Longshore by demanding Classification staff to seize from a release to (RTU). In respance For filing this very Lawsuit. This is evidenced by Multiple wittness.

(21)

101. The aforsaid acts, omissions and practices of Defendants deprived Mr. Longshore of his right to be free from retaliation guaranteed by the first Amendment, right to be free from cruel and unusual punishment, and right to be provided adequate Mental Health care and not be treated deliberatly indifferent Gaurateed by the Eight Amendment, And have the right to be Free from the violations of due process of Law guaranteed by our fourteenth amendment of the United States Constitution: These acts, omissions and/or practices are the direct cause and/or directly contributed to the pain, Suffering, Mental and psycological harm, and willingness to die.

102. Mr. Longshore has been and currently is Suffering exstream Mental pain, terror, humiliation, anxiety, Suffering, emotional distress, Self-inflicted injuries by hanging him self.

103. In addition due to the unlawful Segregation, Mr. Longshore, is Suffering from Lack of human contact, Restricted phone use, Restricted visitation, 24hr Lighting, (5) days 23hr Lockdown and (2) days 24 hr Lock down, Losing out on prison Jobs, earning wages, Educational programs, contact visits, Maintaining relationships with Family, Attending his Native American religous Services, practicing his faith, and all other privliges given to the general population.

104.              F. Causes of Action

## Count 1 Negligence

104. Defendants have a duty to care for inmates and provide adequate Mental Health care. See RCW 71.05 et al, 71.28 et al, and 71.32 et al, Doc offender Health plan, Policy 320.255, 630.500, 690.400.

105. This duty extends to follow up care, appropriate treatment, to foreseeable self-inflicted wounds, Suicidality.

106. This duty exists because prisoners, by virtue of incarceration, are unable to obtain medical and psychiatric care.

107. Defendants breached this duty, and were negligent, when they failed to provide adequate Mental Health care, follow up care, Interfered with treatment once proscribed, Conduct proper training, policies, and procedures, enforce current policies, failing to discipline staff that don't follow policies, provide adequate Amounts of Mental Health staff in IMU, and by Ignoring care and treatment needs of Charles Longshore. To also, include appropriate housing of Mr. longshore given the IMU's conditions is the direct trigger to the escalated Jump of Mr. Longshores current conditions. That werent such a problem prior to Segregation placement.

## Count 2 Negligence

108. Defendants have a duty to conduct regular reviews, verify Seprtee concerns, security risks, Make inquiry into such concerns In order to determin if the need for segregation Still exists. Wac 137, Doc policy 320.180, 320.250, 300.380, 320.200,

(23)

109. Defendant John Campbell breached this duty, as Chair of the HCSC committee that was conducted on october 1st 2015. When he failed to verify pursuant to Doc policy 320.100 that the Sepretee between Defendant Jason Stott still exists.

110. Had defendant Campbell Made inquiry required of him, he would of found out, Jason Stott was terminated in sept of 2015. One Month, prior to his decision to up hold a Imu IMU placement, and out of state refferal.

111. As a resault of this Negligence, Mr. longshore has now with out actual reason been wrongfully in IMU since Sept 2015 to present day. Almost 13 Months, and still on going.

112. Defendant, Bowman, Holbrook, Sinclair and Herzog all failed Since then despite Mr. longshores written Appeals to Make inquiry rather the reason still exists, Periodic 6 Month reviews, and Every 60 day's when the placement is re-evaluated.

113. As a resault, They also are liable for there negligence in failing to follow policy's. that Amounted to almost 13 Months and still on going.

## Count 3 Violation 8th Amendment

114. Defendants acts and failure to act described above were done under color of Law and are in violation of 42 U.S.C. 1983, depriving Mr. Longshore of his constitutional rights, and rights Governed under various federal statutes :

(24)

115. At the time, Mr. Longshore was placed in segregation, then later Transferred to "CO" Area Suicide watch, and subsequent return to IMU despite a "Emergency grievance" that claimed Mr. Longshore would kill himself if returned to IMU. It was clearly established law that the Eighth Amendment prohibits, cruel and unusual Kinds of punishment, The Eighth Amendment imposes a duty on prison officials to provide humane conditions of confinement, including the services of adequate Medical/Mental Health care. See Estelle v. Gamble, 429 U.S. 97, 103 (1976); Brown v. Plata, 131 S.Ct. 1910, 1928 (2011)

116. In addition, Defendants in violation of the eighth Amendment are treating Mr. Longshore deliberate indifferant, in reckless disregards to a substantial risk of Mr. Longshore. Farmer v. Brennan, 511 U.S. 825, 836 (1994) Despite Knowing Mr. Longshore's Mentally ill, See Also Hoptowit v. Ray, 682 F.2d 1237, 1254 (9th cir. 1982)

117. In addition, Defendants Know Mr. Longshore suffers from Sever Mental health conditions. Because Mr. Longshore has constantly Complained to Mental Health provider Dr. Varrell, that his conditions Significantly disrupte his everyday life because Mr. Longshore suffers from "insomnia sleep deprivations" That leads to thought to endanger himself. McGuckin v. Smith, 974 F.2d 1050, 1060 (9th cir. 1992)

## Count 4 Violation of 8th Amendment

118. Defendant's have subject Mr. Longshore to cruel and unusual punishment, by retaining Mr. Longshore in IMU. Despite the reason replied apon does not exist,

(25)

119.   As a resault, Mr. Longshore has been Unlawfully in IMU since
Sept 2015 a tottal of 13 Month's and on going. Excessive
Isolation Amounts to cruel and unsual punishment. Specifically,
when its been used on a Mentally ill inmate who actually
Suffers as a resault. see Jones'El v. Berge, 164 F. Supp. 2d 1096
(W.D. W.S. 2001); Coleman v Wilson, 912 F. Supp. 1282, 1320-21
(E.D. Cal. 1995); Morales Feliciano v. Rossello Gonzalez, 13 F. Supp.
2d 151, 209, 211 (D.p.R. 1998); Arnold v. Lewis 803 F. Supp. 247,
257 (D. Aniz.1992) See also Lyons v. Busi, 566 F. Supp. 2d 1172 (E.D. Cal 2008)
Also Amounts to False Imprisonment.

### Count 5 Violation of 14th Amendment

120.   Defendants Violated Mr. Longshore's Due process Rights
by (a) conducting "MDT" reviews with a biased decisionmaker, (b) failing
to Make adequate inquires into sepretee concerns, (c) excessive placement
in Isolation, and (d) failing to follow it's own policies and
procedures. See Giano v. Selsky, 238 F. 3d 223 (2d cir. 2001);
Palmer v. Richards, 364 F. 3d 60 (2d cir. 2004); Taylor v. Rodriguez,
238 F.3d 188 (2d cir. 2001); Wilkinson v Austin, 545 U.S. 209
(2005).

121.   In addition, causeing Mr. Longshore to Live in harsh conditions
amounting to "atypical and Significant hardships" and triggering
a liberty interests there too.

### Count 6 Violation of 1st Amendment

122.   Defendants Herzog and Bauman have subject Mr. Longshore
to Retaliation for filing a law suit in violation of the 1st

(26)

122. Amendment. By (a) canceling Longshores Anticipated transfer to the BTU for Mental Health Treatment, (b) retaining Mr. Longshore in Segregation despite the need does not exist. And for filing Grievences.

123. Accessing the Courts by filing a action under 1983, filing Grievences against prison staff are all "protected conduct" as part of our First Amendment rights.

124. The actions of Mr. Bowman and Herzog Intimidated Mr. Longshore from pursueing his Grievences and this suit. Despite the adverse actions, and fear, Mr. Longshore has faith in this court that this will be dealt with despite the current suffering Denfendants inflicted on Mr. Longshore.

125. As shown in the pleadings, that this was done, because Mr. Longshore Filed this suit. see Gomez v. vernon, 255 f. 3d 1118 (9th Cir. 2001)

126. Mr. Bowman and Mr. Herzog's Actions are also in violation of 18 U.S.C § 1512(a)(2) for threating witnesses in federal litigation Which is a criminal code, Althaugh not enforcible in a civil rights action, but prosecutible in a criminal.

## Count 7 Violations of the (ADA).

127. under 42 U.S.C § 12101 et seq, 12203(a),(b), section 107, 203, 308 §12117, 12133, 12188, title one, title two, title three, §12111 et seq, 12131 et seq, 12181 et seq, 12132(1) and(B) this claim is brought against the Defendants For violating said act, by failing to

provide accomadations, Discrimination, creating services, Maken availible programs, retaliating, Interfering with proscribed care, and Denying Care to Mr. Longshore.

128. 42 U.S.C SS 12202" State shall not be Immune under the eleventh Amendment" Additionally, tittle two of this act abrogates any 11th Amendment Immunity. See U.S. V. Georgia, 546 U.S 151, 126 S.ct. 877 (2006)

## Count 8 - Violations of Rehabilitation ACT

128. Under section 504, and 505 of the Rehabilitation Act of 1973 29 U.S.C. 794(a) the Defendents have denied Rehabilitation services for Mentally ill Inmates in IMU. As a result, My Mental Health deteriated and I continue to suffer with No rehabilitative programs.

## Count 9 - Conspiring to Violate Rights

129. Defendants, Bowman, Shumate, Buttice. Conspired to violate the rights of plaintiff when they collaberated, and agreed to hold Mr. Longshore in segregation. Despite the disciplinary out come and it's own sanction's. In violation of 42 U.S.C § 1985(2) and (3) and As a Supervisor Bowman failed to act when these violations where planned out in violation of 42 U.S.C SS 1986.

## G.   Exaustion of Remedies.

130.  Mr. Longshore has Appealed the Classification decisions to no avail.

131.  Upon New information and Evidence filed Supplemental Appeals to no Avail.

132.  Mr. Longshore Has Grieved Herzog, Bowman, Holbrook, Stott all to No avail.

133.  Mr. Longshore has Grieved Jaime Davis to no avail.

134.  As such, each and Every Claims are believed to have been Exausted fully to the extent of plaintiff's Knowledge

## H.  Prayer for Relief

135   Damages have been suffered by the plaintiff and to the extent any State Law limitations on such damages are purposed to exist, they are inconsistent with the compensatory, remedial, or punitive purposes of 42 U.S.C § 1983, and therefor any such alledged State Law limitations must be disregarded in favor of permitting an award of the damages prayed for herein.

136.  WHEREFORE, Plaintiff requests a Judgment against all Defendants : and each of them Jointly and severally, and under any other theory Later discoverd.

(29)

137.   Issue Declaratory Relief, declaring the acts and/or omissions of the defendants have violated plaintiffs rights and stating the duties with respect to those rights.

138.   Issue injunctive Relief, ordering the release of Mr. Longshore from segregation, and Directing Defendants to place Mr. Longshore in a appropriate facility.

139.   Award Plaintiff General, Special, Compensatory and punitive Damages in an amount to be proved at trial (Mental & Emotional)

140.   Award Plaintiff Punitive damages against Bowman, and Herzog for Retaliation in an amount to be determined at trial.

141.   Award Plaintiff Punitive Damages for violations of plaintiffs Rights, amount to be proved at trial.

142.   Award Compensatory Damages for violations of plaintiffs Rights, to include also negligence, and false imprisonment.

142.   Award Plaintiff General, compensatory damages permitted by Americans with disabilities act and Rehabilitation Act or an Federal statute. Amount to be proved at trial, For violations therein.

143.   Award punitive and compensatory Damages Against Defendant Bowman, Buttice and Shumate for conspiring to violate the Rights of plaintiff in violation of 42 U.S.C. 1985(2) and (3) and

(30)

1986.

144. Award Plaintiff Such other relief as the court Seems Just in the premises.

I. Verification of Complaint

145. I declare under the Law's of the United States, and under the penalty of Perjury and hereby verify that the Matters herein are true, except as to Matters on information and belief, as true and correct to the best of My Knowledge.

Declared this 10th day of October 2016.

Charles Longshore # 332121
MSB61
Washington State penitentiary
1313 N. 13th Avenue
Walla Walla, WA 99362
            Plaintiff.